This video was made in Cooperation with the U.S. Department of State.    The next case is number 15-1125, Florida Atlantic University Research Corporation v. ASUS Computer International and others. Mr. Stillman. Good morning. May it please the court, my name is Greg Stillman and I'm here today on behalf of Florida Atlantic University and domain associates asking the court to reverse an order of summary judgment. It was entered based upon the trial court's erroneous conclusion that the 385 patent lacks structural support for the function of recognizing the number of lines in an incoming video signal. By any standard of review, whether that standard be de novo or whether it be based upon a review of findings of fact that are clearly erroneous, we believe that the trial court's ruling was an error. Do you think there are any findings of fact that are relevant here? Well, the ultimate finding of fact, obviously, that the patent lacks structure for providing the function of recognizing the lines is the ultimate finding of fact that we think is relevant. To the extent that she found that the patent did not disclose an actual counter that increments on the H-sync and resets on the B-sync, yes, I think that would be a finding of fact. And wouldn't it also be a finding of fact as to whether or not one skill in the art would have understood that something that this black box denotes a particular structure? Absolutely. That would certainly be a finding of fact. At the end of the day, I really do believe that the principal error made by the trial court in this case was a finding that because the word counter was not included in auto line 30, that somehow the patent lacks structure sufficient to inform a person of ordinary skill in the art how this patent recognizes an incoming video signal. Can I just put it in context here? Everybody agrees that we're in the world of 112.6, right? Yes. That this is means plus function. Yes. And everybody agrees, well, there's some back and forth about the function, but it seems to be pretty clear that the function is recognizing, right? Exactly. I don't think there's any disagreement that the function is simply recognizing the number of lines in an incoming video signal without being told. Okay, so the only issue before us is whether auto line number 30, which is the structure, you agree that that's the structure? I agree. And whether or not that structure tells us enough to satisfy 112.6? Whether a person of ordinary skill in the art, looking at the patent in its entirety, its figures and its specifications, would be informed sufficiently to understand what structure performs that function of recognizing the lines. And you agree that... I'm sorry, go ahead. I was just going to say, you're skipping over what seems to be the most critical aspect of this decision, and that is that there must be enough structure in the specification. Exactly. You're telling us that this box with a black line around it and a number is the structure. I am. And you also agree that the term itself, auto line number, is not a term that one of ordinary skill in the art would instantly understand as corresponding to some particularized structure. That term taken in isolation, absolutely, I would agree with that. But obviously, you have to look at the patent as a whole and understand that there is, in fact, structure that accepts an incoming video signal. There's also structure that separates the V-sync from the H-sync, which the only reason for doing that would be to count it, as even the other side's expert has admitted. Perhaps it would be helpful if I could give you just a little bit of background about this invention. As you know, the 385 patent is called an adaptive scan converter. It is certainly not the first scan converter ever invented, but it discloses a method of converting an incoming video signal that was more efficient by virtue of the fact that it did not have to rely upon a fully stored frame or field before it can begin actually processing the information. And as you know from reading the briefs, an incoming video signal presents itself in lines of digital information. And depending upon its source, whether that source be NBC or whether it be ESPN or CNN, the incoming video signal may be presented in 1080p, 1080 lines of information, horizontal information, or 780 or 480 or some variation thereof. So the first thing that any scan converter, not just Dr. Glenn's scan converter, has to do is to recognize how many lines are being presented to be converted. And it's undisputed that there's various ways to do that, right? There are various ways to do that, yes. But there is only one way that is disclosed in this patent. The novel aspect of Dr. Glenn's patent was that it allowed the scan converter to begin processing or interpolating to make that scan conversion process complete. Right now, this case hinges on trying to understand this term called auto line number. It does. And how that box performs this function of recognizing the number of lines for the input signal. It does indeed. And then I read the district court saying that everyone agrees that the intrinsic evidence doesn't tell it to you. We have to go outside the intrinsic record and see if there's any expert testimony that might be able to provide and shed some light on the meaning here. And then concluded that your expert had testified that there were multiple ways of doing it. Counter, timer. In the end, whether it's a counter or whether it's a timer, you're ultimately trying to achieve a count, right, of the lines. But in the end, it could be done, as your expert said, by a counter, by a timer, etc. And so now the district court seemed to feel like it was stuck with that kind of testimony. And then wasn't going to let the expert come back for validity purposes and say, oh, it's really just a counter. So I guess the point is, from the district court's perspective, I can understand its concern that the claim was being perhaps treated like a nose of wax. Read one way for infringement, read another way for validity. What's the response? That's an excellent point. And in many respects, that question goes to the very heart of the error that the trial court committed. And, in fact, I think pertains to your earlier question, Judge O'Malley, as to what findings of fact she made that were inappropriate. The problem that the trial judge encountered, and the reason why there was error here, was that she confused testimony about equivalence under 112.6, which is a matter ultimately for the jury, as to alternative ways that one could go about recognizing the number of lines. So for purposes of proving infringement, obviously, we're entitled to all of the structure that's disclosed in this patent, and all equivalent structure. Provided you start with a structure under 112.6, it's a structure disclosed in equivalence. We're not arguing about whether some of these alternatives, I was just looking to see the most that it says about Block 30, that it's there. And it says under control of a 1125 line read clock derived from Block 30. Right. That is, it's quite a stretch to say that that substantive structure, which would then, since this talks about the clock, entitle the patentee to equivalence. But Judge O'Malley, let's look. Where did the court go wrong on that? Yeah, let's look at what the evidence was in front of the judge with respect to the persons of ordinary skill in the art and how they understood this patent. Both experts, Dr. Reeder and Dr. Von Herzen, agreed that the H&B structure in Figure 1 informs a person of ordinary intelligence with respect to this patent, that the Auto Line 30 includes a counter that recognizes function, that recognizes the number of lines. Did you just say that the other side's expert testified that Auto Line 30 is a counter that recognizes the number of lines? There's no question, but there is evidence in this record, and I'm getting ready to point you to it. Because I saw other testimony from the other side's expert that says there's something in there that counts. And I understand that, because at bottom, you're trying to figure out what is the count of the H-sync pulses between the V-sync pulses. But he didn't say counter. What he said was that, yeah, it's exactly right. The light between these two experts is you have one expert says that I see a counter, and the other expert saying that I see an element that counts. That's the basis upon which this patent has been declared to be invalid. Let me ask. Clearly, if you had said counter means for recognizing, or if you had said means for recognizing, and in the specification, you referred to a counter, then your equivalent argument, as it relates to the expert reports on validity on infringement, would seem to make more sense. But you don't have that kind of language. You have no language that calls it anything. And then if we go back to the testimony at the Markman hearing that had to do with claim construction and was not having to do with infringement at all, you've got Van Herzen saying that the auto line is variously a box that counts the number of input lines or a little digital state machine that could work by counting or timing sync signals or could have other features such as looking at the front porch or back porch of a horizontal scan line. I mean, those are a lot of options. Well, remember that auto line 30 is structured as performing more than simply the function for recognizing the number of lines. And so when he's talking about the fact that auto line number 30 is essentially a digital state machine, he's talking about more than the structure that's in auto line 30 for essentially performing the function of recognizing the number of lines. And that's an important point because auto line 30, there's a lot going on in auto line 30 if you read this patent, and the suggestion that auto line 30 is anything more than a counter with respect to performing the function of recognizing the number of lines is not supported by this record. Let me go on with respect to your question, Judge Hinn, because I think it's an important one, and that is what does their expert actually say? First of all, he says... Can we go back to what your expert said during the Markman hearing? It could be done, for example, by counting. It could be done, for example, by timing. And here's the point. That's different from saying what the patent, in fact, discloses. What he was saying in the context of that hearing was explaining to her... This was in a tutorial. This was not a hearing in which we were discussing the issue of invalidity or indefiniteness. Well, I was trying to understand how these sync signals work when they go and get fed into auto line number 30. Exactly. But there's a difference between saying this is how it could be done versus how it is, in fact, done in this patent. And that's what he was doing in this case. He was giving a tutorial, and she was asking a number of questions about how it could be done. But he was not offering an opinion about what the patent, in fact, discloses as to how it's done. And that's the important thing. Let's look at it differently, then. Is there something in the Markman hearing where the expert says, aha, auto line number 30 equals counter? Yes. Let me point you again. You know, in this case, you could rely almost entirely upon the testimony of the plaintiff's own experts in this case as to what they perceived was going on in auto line 30. Dr. Reeder says, quote, the purpose of the sync separator... Are we going back to the other side's expert? Yes. Okay, I'm talking about your expert. I'll be happy to talk about my expert in a moment. But remember, it's their burden to prove that this patent is indefinite. So that's why I want to focus on... Are you in the JA? Are you a JA 500? I'm in the appendix, which was the Markman hearing, appendix 362 at 63. And Dr. Reeder says, the purpose, and he's talking about the sync separator, is to strip out the horizontal sync pulses and the vertical sync pulses. And those pulses are sent to the line marked here, and they go to unit 30, which is the auto line number. What the auto line number does is automatically derive the number of lines in the analog input signal. The way it does that, it simply counts. It simply counts how many of the horizontal sync pulses occurred before a vertical sync pulse occurs. And that's at the appendix of 362, 363. There's something, maybe you can explain it. The specification actually says control of an 1125 line read clock. Then it says in parentheses, derived from block 30. Yes. And I didn't see any reliance on saying that this was a sufficient structure. Is that because of the derived usage? Perhaps. Dr. Reeder, in responding, in fact, to a question from the judge during the Markman hearing, said this. He said, the patent doesn't use the word count, but because the nature of the signal that is coming through sync separator 24, remember, there's no reason to separate these signals unless you're going to count them. The way the patent is designed, you have to perform that count as an active duty. And this is Dr. Reeder. How does the timer work? You know, I'm not altogether sure. I would think it would work based on you figure out the time between the vertical sync pulses, and then you would figure out the time between two individual horizontal sync pulses. And then knowing those two numbers, you could divide out and figure out the number of each sync pulse. Exactly. But sooner or later. So that would be the timer. And that wouldn't be the same thing as using a counter. Well, but sooner or later. You would be using the H sync pulse and B sync pulse. You would. But sooner or later, you would have to count. I mean, sooner or later, you have to. There's a count at all. You have to ascertain the number of lines. So that means you have to count. But the point is, whether or not it is the same or whether it is not, would be a matter of whether it's of equivalence under 112.6. What we're suggesting to you is that this record shows that the only testimony, if you look at the declaration of Dr. Barnherson when he was submitting his declaration in opposition to the motion for summary judgment on the question of indefiniteness, he was quite clear as to how the patent worked. The confusion that occurred occurred during the Markman hearing and tutorial where the expert was talking about how you could do certain things for purposes of equivalence under infringement, which is an issue ultimately for the jury. But that's a different question. It's about your own counsel argument during the Markman hearing where you said to the court, you know, this recognizing function is broader than just counting. It's using a variety of tools available to us to determine how many lines there are. Right. And during the Markman hearing, there was an issue about whether or not we were going to construe the claim as deriving versus, you know, suggesting that there's some kind of calculate or some kind of processing going on, as opposed to a simple count versus ascertaining the number of lines without being told. Let's hear from the other side. We're over time, but we'll see where that takes us. Mr. Hackett. Good morning, Your Honors, and may it please the court. The district court did correctly hold that patent 385 is indefinite as a matter of law. The problem, as I think the colloquy this morning has made clear, is very simple. The claims define a, quote, means for recognizing the number of lines in the input format, but the corresponding structure is only a mysterious black box labeled nothing more than auto line number 30. Well, why is it so mysterious? If all of the experts on both sides agreed that these were straightforward, there are a whole bunch of different ways that you could perform this black box. That's exactly what's mysterious about it is which particular structure is supposed to be used to perform what is, indeed, the agreed upon function, which is to recognize the number of line, which as Judge Chen points out, the experts ultimately agreed, includes a count in the sense of identifying the number, but the whole problem is it's a complete mystery based on the specification as to what the structure of the device is that is to arrive at what might colloquially be referred to as a count. It wasn't a mystery to the people in this field. It may be a mystery to us, but they had no trouble in testifying that there are all sorts of ways that somebody who knows his way around this technology would conduct that function. Well, two points, Your Honor. First of all, it wasn't clear. For example, the inventor himself didn't have any idea, literally zero idea, what structure would be used to accomplish the function he envisioned when he invented it. But your expert was pretty clear at the Markman hearing. I mean, if we go back to the pages that were being cited to us, 362 and 363, it says the auto line number, what it does is automatically derive the number of lines and the analog input signal from the sync signal. The way it does that is that it simply counts how many of those horizontal sync pulses occurred before a vertical sync pulse occurred. And there's a colloquy where the court asked him to explain that, and he said it does it by counting. But counting is not the function. The function is recognizing. Well, not quite. What he's describing there is what it does, and that's part of a colloquy where the issue in dispute was whether it recognizes the number of lines by being told. It's a passive function, which would be true, for example, in the digital standard. The first packet of information that comes through will have literally the number written on it effectively, and the device will just read that number. And the point here was that the patent contemplated a device that performed the function of actually actively identifying that number. That's what was meant by the term counting. But at no point, and here's the critical point with respect to means plus function claims, at no point does Dr. Reeder, does Dr. von Herzen, does any other expert who testified in this case, identify the one particular structure, and that's the burden that this court's precedents established, the one particular structure that all experts would identify as the way to recognize the number of lines. That's the point. Dr. Reeder never said anything like that. To the contrary, in that same colloquy, the court itself, referring back again to Dr. von Herzen, who had said not only could it be performed by a counter and a timer and et cetera, he also said it could be a digital state machine. And the court then says to Dr. Reeder, well, couldn't it be a little computer? And he says, it's an element that counts. Yes. So all he's recognizing is that, yes, there has to be a structure that performs the function of counting, in the sense of recognizing the numbers, arriving at a count, as Judge Chen put it. But at no point does Dr. Reeder say, here's the structure that I, as a person skilled in the art, recognize as the one structure that performs that recognizing function. You are looking for the one structure. They're saying this is old news. Anybody in this field would know how to conduct the counting. But the problem is when you're doing a means plus function claim, as this court's precedents have repeatedly said, it is insufficient for the claim to say there are known ways of doing this. Experts will figure that out. I'm just claiming all of the ways of doing that. That's this court's decision in Bio Medino. The patent here is much worse or much less definite than the patent in Bio Medino, which was held to be indefinite. That patent explicitly, the specifications are explicitly referred to, quote, known equipment, known equipment for gauging the pressure valves and other things. And this court said that was insufficient, it wasn't definite enough, because it didn't specify which equipment. Now, I agree with that. But there are thousands and thousands of software patents out there which have exactly the same method of presentation. There's a box with a line around it. It says this is the next step that's conducted, and it's all conducted, computer controlled, and each step is known. And what we've done is that we've put them together to achieve something that hasn't previously been achieved, and this is where the technological contribution is. And so for each of these steps, what's described much of the time isn't much more. It says that it's an 1125 line read clock. It isn't completely devoid of description. Not overall. I mean, there are things that are described in the patent, but what this court's precedents require. That number 30. Yes, you have to focus in on what it is. So you're talking about number 30, and they say under control of an 1125 line read clock. So isn't that structure of a clock? I don't think anything in the specification refers to auto line number 30 as a clock, and certainly it doesn't. Okay, I direct you to column four, from which I'm reading. I'm sorry, which page in the? Under control. Under control of an 1125 line read clock derived from block 30. It's a U1. These are lines 58, 59. Which page of the appendix? I'm sorry. So it isn't that it's totally silent. And the question, the difficult question, is how much more is needed? I mean, I'm not sure where the clock is coming from, but if anything, your honor has just underscored the whole problem here, which is none of their experts say that it is only a clock. But your experts did. No, our experts said you can't identify the structure. All I have to do is read the lines. This is not a major technological contribution or even a minor technological contribution. The invention, what's covered, is all of these steps together to start from wherever it starts and to end up with a result not previously achieved. But not with respect to auto line 30. If you're focusing on that particular element, there it's a black box. I mean, there's nothing described there. That's the whole problem. It doesn't say clock. It doesn't say counter. It doesn't say digital state machine. All of that is expert testimony, which I agree. Nobody is saying that it would have been impossible for an expert to figure out a way to recognize the number. But that was true in Biomedino too. The experts for both sides said this is old news. There's nothing new about counting. But the problem with the means plus function claim, that was true in Biomedino, your honor. In Biomedino, everybody understood that there's a way to measure, to control the pressure. That was nothing interesting, nothing new. This court said the patent was indefinite because it didn't specify the structure, the particular structure that was contemplated for accomplishing that function. What if it said counter? What if there was – is counter a known structure? Right. So point one is it doesn't say counter, and that's enough for this court to affirm, and that's exactly what the lower court identified. But point two was that is precisely the problem here, is that if it had said counter, you would have had a different evidentiary inquiry. You would have had the kind of evidentiary inquiry and the kind of analysis that this court applied in the S3 case. You would have had the experts join and say, do I know what a counter is? Do all the experts know what a counter is? Is the word counter being used here in a noun form of a description that it's something that counts, or does it mean this counter thing that all experts can go on the shelf and pull off the counter and we all know what a counter looks like? You would have that kind of a battle joined, and the court would resolve that battle, presumably, and you would have a different kind of inquiry. It might even result in the conclusion that it's not a means plus function analysis. Absolutely. That's exactly right. It would depend on where you have the word counter. If it's in the claim, then it might eliminate the means plus function. Here, by hypothesis, it would be appearing in the specification. Let me ask you a different question. In your complaint, and the district court mentioned the delay. In your complaint, you mentioned latches. The district court apparently remembered and commented on the equitable aspects. Have you abandoned any suggestion that there was an unreasonable delay? We certainly have not, for purposes of litigation, abandoned anything. What we're arguing on appeal is that the district court was right for the reasons of the district court. We're just talking about this appeal. That's right. We have no obligation to urge all of the other potential reasons we might prevail that the district court were wrong and the reasons she gave. She's absolutely right. I want to add one other reason that she's right, beyond the reasons that she specified, which is an important concession made this morning, which was that the resolution of the record by the district court involved factual findings, factual determinations to which this court is required to defer and only reverse if clearly erroneous. I don't think the court needed to or needs to decide the case that way. The regular summary judgment standard can be applied, and what you have is a simple failure of proof. There's just no evidence that everybody agrees that there's one particular structure that's referred to in the specification. But if you view the court's analysis of the evidence as factual findings, like my adversary suggested you should this morning, then the case is even easier because there's no way you can find it to be clearly erroneous, given the fact that the standard is whether there's substantial evidence supporting it. Dr. Reeder says there's nothing known to persons skilled in the art as to what an auto line number 30 is. The inventor had no idea. Dr. Von Herzen explicitly stated there could be multiple different things that accomplish that. It could be a counter. It could be a timer. It could be et cetera. It could be a digital state machine. None of that is sufficient under this court's indefinite precedence as opposed to a valid precedent. Isn't it wrong with our indefinite law that we don't allow a class of structures to be claimed when it's not actually the point of novelty of the patent? I don't think so. I mean, that's obviously for this court to analyze. But I think what the court has said, and it's absolutely fair and understandable, is the notice policy underlying all of patent law requires, particularly with respect to means plus function claimings, if you just say patent a means for doing something, you could claim all the means possible in the world. And other potential innovators down the road will have no idea whether their new device fits within the scope of the claimed patent. That's why this court has for, at this point, decades now insisted upon rigid adherence to the specification as identifying the particular structure, the particular structure, known to persons skilled in the art as the structure for accomplishing the specified means. Well, that's in the statute. That wasn't any creative law of the court. But as you know, that statute was adopted to overrule some cases of the Supreme Court, which said you can't claim a function, doesn't matter what structure you've got. You can't claim a function. So the purpose was to enable it, claiming a function. And then the question comes, and I agree that it turns on a question of fact, as to has it been enabled and that there is a threshold requirement. And I think the real question coming up here is when all of the experts on all sides really did not see this as a problem, that there is enablement. Because anybody would know, and therefore the sketchy, admittedly quite sketchy, statement in this specification satisfies the statute requirement of structure when you're talking about software. So I think you're referring to a novelty analysis that it satisfies a novelty requirement. No, I'm talking about 1.6. OK. But the problem there is this case court's cases have consistently said that it's not enough. I don't think you'll cite, you'll find any precedents of this court that say it suffices to satisfy the definiteness requirements, the mean plus function, if all of the experts say it's easy enough to figure out what one would do. But it isn't quite that. I keep taking this back to the one sentence here, which does go into further detail. And the question is, does that suffice when it suffices for the experts? I guess I'm just resisting your understanding of the facts, and I would ask you to rely on the district courts. It's not the facts, it's the specification. Right, I understand. But the specification, nobody thinks that the spec, literally nobody before the court, thinks that the specification identifies a clot as the one structure that fulfills the function. It's just not there. It's not a one structure. They're calling what's in the specification. I understand. The specification has to identify with sufficient particularity the structure for accomplishing the function. And they have the burden on appeal. I mean, there's multiple problems here, but among them is the fact that they've waived this argument that it's a clot and nothing else. None of the experts below said it was a clot. They haven't raised it in their brief. But where did they waive the argument? In their entire brief. I don't think the word clot appears in their brief. Nobody thinks it's a clot. Zero people in this case. There's no expert that thinks it's a clot. They say they're not limited to a clot. So the fact that they don't mention clot, how can they have waived something that they didn't propose? The problem then is the specification covers, you don't know what it covers. It was their obligation and is their obligation to identify the one particular structure that is in the specification. And if it's a clot or a timer, if that's the same thing as a clot, or a counter or a digital state machine, then this court's case decision in Biomedino and others, but Biomedino I think is the most important one because there it was the same thing. But worse, there at least they specifically said there's known structures. The patent referred to known structures for controlling pressure. And this court said the fact that you can have experts come in and agree there's multiple different ways to gauge and control the pressure isn't enough because with a means plus function claim, it is incumbent upon the patent to identify the particular structure for accomplishing that function, not simply to refer back to the idea that experts will be able to figure out and implement some functional structure. Okay, any more questions? Any more questions? We urge the court to affirm. Thank you very much. Thank you. May it please the court, collectively, I think all of the questions that the panel has asked counsel today, I think inform what this decision needs to be based upon. We are not suggesting that the evidence below was simply that the experts could somehow figure out what kind of structure is in this patent. The evidence below is that both of these experts, persons skilled in the art of this patent, testified that this was, in fact, a counter. Not just a counter, mind you, but a specific kind of counter that increments on the H-sync and resets on the V-sync. But you're, again, talking about the evidence, the testimony. I am. I'm talking about the evidence in front of the trial court. Threshold in the specification. The statute is clear. I am. And I can't, it's hard to find that one sketchy line. Well, as you know from the court's precedence, all of these patents have to be interpreted and viewed in the light of the testimony of one skilled in the art. To be sure, if I were left to my own devices to interpret some of the patents that I try on a daily basis, I'd be in big trouble. So we have to rely upon the testimony of those skilled in the art. Counsel just said to you that neither expert was able to identify the particular structure. I would encourage you to look at the appendix at 766, 776 through 813, where Dr. Reeder talked about a specific kind of counter that was found in the B.B. Dalton patent, which he says, in fact, invalidates our patent because it was anticipated or rendered obvious, apparently, as a result. He goes on to say, based upon what a POSA would understand about ALM30, it is my opinion that these components in the B.B. Dalton patent would have the identical structure to it or, at a minimum, the identical structure under plaintiff's application of this claim for arguing infringement. In other words, how do you know that I've got a patent here that's invalidating based upon the identical structure unless you know what that structure is? He had to know what that structure is. He said so in his report and in his testimony and that it was a counter that increments on the H-sync and resets on the B-sync. Again, I encourage... Didn't that whole section, though, begin with the proposition that he's only arguing that to the extent that we would find or that the court would find that the patent actually discloses a structure and that the structure happens to be what you're saying it is? Your Honor, these decorations are made under oath. He's basically saying that he finds that there's a prior art reference that has the identical structure. Now, if he doesn't understand what that structure is... The identical structure that you're arguing can be found in the patent, but he begins that with the proposition that he doesn't find it in the patent. Well, I don't know how one could find the identical structure unless you had a pretty good idea of what that structure is, but let me close by asking you to look at the language in the Telecordia case. Quote, The figures of the 763 patent show the controller circuit as a black box. However, the absence of internal circuitry in the written description does not automatically render the claim indefinite. Here, the expert testified that a person of ordinary skill would know how to interpret the specifications and actually build a circuit. Therefore, the specification, along with the figure, shows sufficient structure to define the claim terms for an ordinary artisan in the field. Cisco, the defendant in that case, bears the burden of proving by clear and convincing evidence that a person of ordinary skill would not understand the disclosure. Can anyone really say, based upon this record, that neither of these experts understood that the function of recognizing the lines in an incoming video signal was done by a counter that increments on the H-sync and resets on the V-sync? That's exactly what Dr. Reeder understood. That's exactly what Dr. Von Hersen understood. And for that reason and all of the other reasons articulated in our brief, we ask that the court reverse the trial court's ruling on summary judgment. Thank you. Thank you, Mr. Shulman. Mr. Hacker, the case is taken under resolution.